IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GUNNAR GEORGE TEMPEST,

                Plaintiff,

    v.

NURSE SHANTA ANDERSON, KAITLIN KINYON,
KAREN LEE, MEDICAL MANAGER NICOLE PARR,
and JARED HOY,

                Defendants.

OPINION and ORDER

24-cv-709-jdp

---

Plaintiff Gunnar George Tempest, proceeding without counsel, alleges that defendants, nurses at Wisconsin Secure Program Facility, denied him medication for his post-traumatic stress syndrome, which caused him serious withdrawal symptoms. Tempest brings an Eighth Amendment medical care claim for damages.

Defendants move for summary judgment. Dkt. 49. The material facts, most of which are undisputed, show that defendants took reasonable efforts to address most of Tempest's concerns related to missing his medication, prazosin. There were minor delays in Tempest's receipt of prazosin, but there's no evidence that any defendant caused those delays. Even if defendants did not respond to every one of Tempest's complaints, the evidence does not suggest that any defendant thought that he required more urgent care. I will grant defendants' motion and close the case.

UNDISPUTED FACTS

I begin with a word about Tempest's summary judgment opposition. On summary judgment, this court requires the moving party, here defendants, to set out a statement of

proposed facts with citations to admissible supporting evidence. *See* the attachment to Dkt. 16 at 2–4. The party opposing the motion, here Tempest, must state whether each fact is disputed, and if it is, support the opposition with a specific citation to admissible evidence. *Id.* at 3–5. The court cautions the parties that it won't search the record for evidence that supports their contentions. *Id.* at 1, 3, 5. If the party opposing the motion proposes additional facts, he must follow the same procedures. *See id.* at 3. If a response to a proposed fact relies on inadmissible evidence or otherwise does not comply with the court's procedures, the court takes the original factual statement as true and undisputed. *Id.* at 8. All litigants must comply with the court's orders and rules. *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020).

Tempest's opposition to defendants' proposed facts doesn't comply with the court's summary judgment procedures. To support his disputes, Tempest mostly relies on his additional proposed facts, which are not admissible evidence by themselves. *See* the attachment to Dkt. 8 at 3–4. Tempest's additional proposed facts themselves don't comply with the court's summary judgment procedures because he cites multiple exhibits, his entire affidavit, or both to support each proposed fact. *See* Dkt. 62.

Defendants' proposed facts are properly supported with evidence so, with one exception, I will accept them as undisputed. *See Allen-Noll*, 969 F.3d at 349; *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1177–78 (7th Cir. 2001). I will not accept defendants' proposed facts as undisputed if they are directly contradicted by specific factual statements in Tempest's affidavit and sworn complaint for which he has personal knowledge. *See McDaniel v. Syed*, 115 F.4th 805, 814–16 (7th Cir. 2024); Fed. R. Civ. P. 602.

With that background, the following facts are undisputed except where noted.

Tempest was incarcerated at Wisconsin Secure Program Facility (WSPF) in late 2023 and early 2024, when the events occurred. Defendants Shanta Anderson, Kaitlin Kinyon, and Karen Lee were nurse clinicians in WSPF's health services unit (HSU). Defendant Nicole Parr was the HSU manager and nursing supervisor.

Tempest has post-traumatic stress disorder and has been prescribed prazosin for that condition. Prazosin is used to treat high blood pressure, but it is also used to reduce nightmares associated with PTSD.

On December 19, 2023, a psychiatrist, Dr. Kiti Ton, received a message stating that Tempest's prazosin prescription was going to expire on December 31, 2023. *See* Dkt. 56-1 at 17. Ton forwarded the message to Advanced Practice Nurse Prescriber (APNP) Michael Field. *Id.* Field responded that he could not renew the medication because Field was no longer contracted at WSPF. *Id.*

Ton modified the order for prazosin. The electronic record of the modification says "expiring meds–never seen by me" in the "Reason for Visit" field, and "12/27/2023" in the "Stop Date/Time" field. Dkt. 62-1 at 72. Tempest's medical administration record says that he received prazosin from December 19 to December 30, 2023. Dkt. 56-1 at 37–40. Tempest says that he stopped receiving prazosin on December 19, 2023. *See* Dkt. 60 ¶ 2.

On December 21, 2023, Kinyon saw Tempest for complaints of leg swelling. Tempest says that he complained about not receiving prazosin at this appointment. *See* Dkt. 60 ¶ 2.

Tempest did not receive prazosin on December 31, 2023, or January 1, 2024. A day later, a sergeant reported that Tempest was asking for prazosin. Defendant Anderson reviewed Tempest's chart and saw that he no longer had an order for prazosin. Anderson also saw that

3

Tempest had an appointment scheduled for the upcoming week with psychiatry, at which he could ask for his prazosin to be renewed.

A short while later, Anderson saw Tempest for complaints for chest pain. Tempest told Anderson that he felt unwell and asked her to reorder prazosin. Anderson examined Tempest and ruled out that his chest pain was caused by a serious underlying condition. But Tempest was agitated, so Anderson contacted Dr. Sarah English. That day, English prescribed Tempest a 10-day supply of prazosin. He received prazosin from January 2 to 11, 2024. Dkt. 64 ¶ 108.

On January 16, 2024, Tempest submitted a health services request (HSR) in which he complained that he had not received prazosin or been seen by psychiatry. Dkt. 56-1 at 42. On defendant Kinyon's request, Sarah Martin scheduled Tempest to see the psychiatrist the following day. *See id.*

The next day, defendant Nurse Lee saw Tempest for complaints of chest pain. Tempest told Lee that he hadn't received prazosin or a psychiatric appointment. Lee determined that Tempest's vital signs were stable, and she told him that his psychiatric appointment was scheduled for the next day. *See* Dkt. 64 ¶¶ 74–76, 78. Tempest insisted that Lee contact the on-call provider to obtain prazosin. *Id.* ¶ 79. Lee then called the on-call provider, Dr. Mark Ledesma, who told Lee that Tempest could wait until his psychiatric appointment to discuss medication. *Id.* ¶ 81. Lee also relayed Tempest's concerns to the psychological services unit. *See* Dkt. 56-1 at 6.

Lee says that Tempest threatened to lie down and become unresponsive if he didn't receive prazosin. Dkt. 55 ¶ 26. Tempest says that he specifically threatened to cut his wrists. *See* Dkt. 60 ¶ 2. In either case, Lee acknowledged Tempest's concerns and, so that he could relax, encouraged him use breathing techniques, read, write, and listen to music. Dkt. 64

¶¶ 86–87. After the visit, Lee relayed Tempest's concerns to APNP Kiley Kuepper, who did not respond. *Id.* ¶¶ 88–89.

The next day, Tempest was seen by Ton, who prescribed prazosin for 90 days. *Id.* ¶ 111. The same day, Lee saw Tempest for complaints of blurred vision, lightheadedness, dizziness, and feeling hot and cold. *Id.* ¶ 90. Tempest attributed these symptoms to missing prazosin. *Id.* Lee confirmed that Tempest was scheduled to receive his prazosin that evening. *Id.* ¶¶ 92–93. Lee also updated Dr. Gina Degiovanni, who did not issue any new orders. *Id.* ¶¶ 96–98. Tempest says that he did not receive prazosin for another three days.

Advanced care providers are responsible for care plans, final treatment decisions, and writing prescriptions. *See* Dkt. 64 ¶¶ 137–38. Nursing staff must defer to advanced care providers about appropriate medication interventions, including prescriptions and treatment plans. *Id.* ¶ 139. Regarding medication distribution, nursing staff are limited to providing prisoners with over-the-counter medication. *Id.* ¶ 141.

I will discuss other facts as they become relevant to the analysis.

ANALYSIS

**A. Preliminary matter**

Tempest initially sought leave to proceed against unidentified "John Doe" medical staff. I allowed Tempest to proceed against Doe medical staff on an Eighth Amendment medical care claim for damages, and I added Department of Corrections Secretary Jared Hoy as a nominal defendant to facilitate service of process. Dkt. 8 at 4. Tempest eventually identified the Doe medical staff, so Hoy's inclusion in the case is no longer necessary. I will remove Hoy as a

nominal defendant. I will analyze Tempest's medical care claim against Anderson, Kinyon, Lee, and Parr only, as those are the actual defendants now identified.

## B. Eighth Amendment medical care claim

Tempest is proceeding against defendants based on the allegation that, between December 19, 2023, and January 21, 2024, they refused to give him prazosin or an emergency substitute even though they knew that he wasn't receiving prazosin. *See* Dkt. 8 at 2–3 (court's summary of complaint's allegations). Tempest says that missing prazosin caused him numerous symptoms, including insomnia, seizures, suicide threats, vomiting, diarrhea, lightheadedness, incontinence, fainting, impaired vision, flashbacks, and lethargy. *Id.* at 2; Dkt. 60 ¶ 2.

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove a medical care claim, Tempest must show that he had an objectively serious medical condition that defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Defendants dispute that Tempest experienced some of the withdrawal symptoms that he describes, but they don't dispute that he had a serious medical need for prazosin. The primary issue, then, is whether, between December 19, 2023, and January 21, 2024, defendants consciously disregarded Tempest's need for prazosin.

Conscious disregard requires that defendants are subjectively aware of that need. *See id.* That means that defendants knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *Id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Disagreement between Tempest and defendants, or among medical professionals, about the proper course of treatment isn't enough to show conscious disregard. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, she consciously disregards the serious medical need only if her care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). The key question is whether the medical professional based her treatment decision on her medical judgment. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021).

Tempest must show that each defendant, through her own actions, denied him prazosin. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). So individual liability for a civil rights violation "requires personal involvement in the alleged constitutional deprivation." *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Defendants cannot be liable for a constitutional deprivation "if the remedial step was not within their power." *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).

Tempest's medical care claim against defendants has a general problem. Tempest faults defendants for not providing him with prazosin (or a substitute) during the period at issue. But as nurses, defendants lacked the authority to prescribe medication; they were limited to providing over-the-counter medication. There is no evidence that an over-the-counter medication would have helped treat the withdrawal symptoms that Tempest describes, let alone that any defendant thought that to be the case. These considerations might be dispositive of Tempest's claim, but I take Tempest to allege that defendants consciously failed to make reasonable efforts to help him obtain prazosin from December 19, 2023, to January 21, 2024.

Tempest's interactions with defendants during that period were limited. Kinyon saw Tempest on December 21, 2023, for complaints of bilateral leg swelling. Tempest vaguely says, and Kinyon disputes, that he complained about missing prazosin at that appointment. *See* Dkt. 53 ¶ 8; Dkt. 60 ¶ 2. I'll assume that Tempest made that complaint, but his medical administration record says that he was receiving prazosin at that time. Dkt. 56-1 at 37. Tempest says that Ton had canceled his prazosin prescription two days earlier, but the record of Ton's modification indicates that the prescription would not stop until December 27. *See* Dkt. 62-1 at 72. So Kinyon had good reason to think that Tempest was receiving prazosin. Also, apart from leg swelling, Kinyon evaluated Tempest and documented that his symptoms were unremarkable. *See* Dkt. 56-1 at 9–11. So, even if Tempest complained about missing medication at that visit and told Kinyon that he was experiencing withdrawal symptoms, there's no reasonable basis to infer that Kinyon thought that he needed prazosin, a substitute, or other care.

The medical records show four other interactions with defendants related to prazosin in the period at issue. On January 2, 2024, Tempest told Anderson that he felt unwell and

asked her for prazosin. But Anderson did not disregard his concerns; she took several actions to address them. Anderson reviewed Tempest's medical chart and confirmed that he had an upcoming appointment with psychiatry, at which he could ask for his prazosin to be renewed. Anderson also examined Tempest and ruled out that his chest pain was caused by a serious underlying condition. But Tempest was agitated, so Anderson contacted Dr. English, who prescribed a 10-day supply of prazosin. Tempest does not dispute that he received prazosin from January 2 to 11, 2024.

On January 16, 2024, Tempest submitted an HSR in which he complained that he had not received prazosin or been seen by psychiatry. Specifically, Tempest wrote that he needed to be seen "ASAP," that his medication was being "messed with," and that prazosin would "work as a 2 for 1 for [his] blood pressure." Dkt. 56-1 at 42. Far from disregarding this complaint, Kinyon contacted Martin that day and had her schedule Tempest to see the psychiatrist the next day. Dkt. 62-1 at 71. The content of that HSR did not suggest that Tempest required more urgent care, let alone that Kinyon thought that to be the case.

The next day, during a visit, Tempest told Lee that he hadn't received prazosin or a psychiatric appointment. Lee responded by: (1) examining him, determining that his vital signs were stable, and and verifying that his psychiatric appointment was scheduled for the following day; and (2) contacting the on-call provider, Ledesma, who said that Tempest could wait until his appointment to discuss his medication concerns. It's undisputed that Lee had to defer to Ledesma's judgment. *See* Dkt. 64 ¶¶ 137–39; *see also Pulera v. Sarzant*, 966 F.3d 540, 553 (7th Cir. 2020) (holding that nurses were entitled to defer to a doctor's medical judgment). Tempest continued to complain, even threatening to harm himself. But Lee did not ignore him. She acknowledged his concerns and gave him recommendations on how to relax. Lee also relayed

his concerns to another provider, non-defendant Kuepper, who apparently didn't deem them serious enough to take immediate action.

Lee's care didn't end there. The next day, she saw Tempest for complaints of various symptoms that he attributed to missing prazosin. Lee confirmed that Tempest was scheduled to receive his prazosin that evening. She also updated Dr. Degiovanni, who didn't issue any new orders. The same day, Ton prescribed prazosin for 90 days. Tempest says that he didn't receive prazosin for three more days, but there's no evidence that any defendant was aware of that delay, much less that any defendant could have remedied it.

Tempest says that each defendant was present during the four in-person visits discussed above. *See* Dkt. 60 ¶ 2. But even if that's true, as explained above, Tempest's medical concerns were mostly addressed during the visits, and no reasonable juror could infer that Kinyon thought that he required more urgent care at the January 16 visit. There is no evidence that any other defendant present during those visits thought that Tempest required additional care, and the observing nurses could rely on the treating nurses to do their jobs. *Cf. Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Tempest also says that defendants laughed at him during these visits. Dkt. 60 ¶ 2; Dkt. 1 at 4. Even if this is true, potentially callous statements or acts by medical staff don't show conscious disregard if staff are treating the prisoner's condition, as occurred here. *See Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013); *see also Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (stating that the Eighth Amendment does not require prison staff to have "genteel language" or "good manners").

Tempest also suggests that he met with defendants other times between December 19, 2023, and January 21, 2024, and that they disregarded his complaints about serious symptoms

caused by prazosin withdrawal at those visits. *See* Dkt. 1 at 3; Dkt. 60 ¶ 2. But the medical requests in the record don't support the idea that Tempest had several *other* visits with defendants in the period at issue. *See* Dkt. 56-1 at 39–43; Dkt. 62-1 at 34–36, 83. Tempest does not explain how he managed to obtain the other visits, for which he fails to provide specific dates, without corresponding medical requests. His description of the care, or lack of care, that defendants provided at these purported visits is vague, and he appears to seek to impose liability on them based on a theory of collective responsibility. *See* Dkt. 1 at 3; Dkt. 60 ¶ 2; *see also Syed*, 115 F.4th at 815 (disorganized summary judgment submissions from litigant proceeding without counsel don't "justify overlooking . . . *specific factual assertions* made under penalty of perjury" (emphasis added)); *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("A complaint based on a theory of collective responsibility must be dismissed."). No reasonable juror could conclude based on these sparse, uncorroborated allegations that any defendant consciously disregarded Tempest's need for prazosin at any of these purported visits.

Tempest says that he's entitled to relief because his related inmate complaint was affirmed. Dkt. 1 at 3; Dkt. 60 ¶ 2. The inmate complaint examiner's finding that there was "a delay in issuing the refill" was affirmed. *Id.* at 49. But no grievance official attributed the delay to any defendant. *See id.* In any case, mere violation of a prison policy doesn't show conscious disregard. *Pulera*, 966 F.3d at 551; *Schroeder v. Sawall*, 747 F. App'x 429, 431 (7th Cir. 2019).

No reasonable juror could conclude that any defendant consciously disregarded Tempest's need for prazosin. I will grant summary judgment to defendants and close the case.

ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment, Dkt. 49, is GRANTED.

2.  Hoy is to be removed as a nominal defendant.

3.  The clerk of court is directed to enter judgment and close the case.

Entered April 10, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge